The Court, John Sauer, appearing on behalf of the State Appellants in this matter. Every case on the class certification issue here that both parties rely on agrees to, assumes, and accepts the same principle, which is determinative in this case. And that is that for a class to be certified, every class member must have a potentially viable claim. So in Wal-Mart v. Dukes, the Supreme Court said that the challenge policy must be unlawful only as to all class members or none of them. In Postoco, this Court said, upheld certification because the alleged policy was so inadequate that a constitutional violation occurs as to every inmate. And there's an unconstitutional risk of harm as to all class members. The Fifth Circuit in the Yates decision said the same thing. Judge Reinhardt's opinion in the Parsons decision says the same thing. So in order for this class to be certified, every class member must have a potentially viable, facially plausible claim for relief. Well, I think that's a gross overstatement. I join in your comment. Absolutely. Without context, you can make that statement, I suppose, in a classroom and it would sound great. But it just doesn't hold up. It doesn't hold up here because I don't know what the relief is. Now, in Postoco, we were presented and carefully emphasized in the opinion that the district court had in the record, the class action certification record, proposed injunctions. Where is that here? I agree with that, Your Honor. I think that's... Do we have that? I do not see that in the court certification order. I absolutely agree with that. It could be in the complaint. It could be in the plaintiff's class certification papers. Or it could be, and is not clearly, in the class action, in the district court certification order. Do we have it? I think the only place in the record where that occurs that I'm aware of is at JA 86 and 87, which is actually the prayer for the relief in the complaint. And that asks for sweeping injunctive relief. So that is vaguely defined. It wouldn't meet the Fifth Circuit's specifications. Sweeping injunctive, that's like saying every class member has to have a claim. What precisely do they want? They're asking for, for example, an order requiring the state to, quote, implement and maintain a comprehensive electronic health care record for all of the class members. Okay, so that would be beneficial to every member of the class. But beneficial is not enough. It must alleviate a constitutionally intolerable risk of harm for every class member. Wait, wait, wait, wait, wait. Well, all right.  You and I have a very, very different view of class action precedent. Well, maybe I could. In B-2 cases. I think that what I would emphasize maybe is this court's language in the Pestaco decision. The court made a specific finding on the record that, for example, almost all persons in the class with chronic HCV should be treated with these DAAs, and that each day without treatment increases the risk of liver damage and health. In this situation, go ahead, Your Honor. You're so loud, frankly, it's hurting my ears. All right, you've got one group of citizens in a prison or a prison system, and you've got one specific health thing. So you can target an injunction, and you can say at the class action stage, what kind of targeting you want to do. I don't understand what kind of targeting we're doing here. If we're just rewriting the statewide regs in a general way that will apply to hundreds or if not thousands of social workers and county executives, then A, I don't understand why it's even cognizable, but B, I certainly don't understand why we need a class action. I strongly agree with that. I strongly agree, Your Honor. I'm asking in the record for clarification as to what we're doing here. I absolutely agree with that. That clarification, in my view, is absent from the record, and most critically it's absent from the district court's order certifying the class. So that deficiency, Judge Loken, which you've identified, would be absolutely a sufficient reason to vacate and remand. On that basis alone, and you correctly emphasize in the Pistago decision, this court carefully considered the scope of the injunctive relief that was being considered, and your opinion in the Elizabeth M case emphasized that where the injunctive relief requested would require, quote, the district court to mandate and monitor detailed programs, that raises grave federalism concerns and is inappropriate. So the deficiency in the district court's order that you've identified is absolutely a sufficient basis to reverse and remand the certification order in this case, but I would just submit to the court that there are additional deficiencies because on its face this class consists of a large number of individuals, probably the majority or the large majority, who have no cognizable claim at all. Well, I want to get past that. I want to go to cohesiveness, and I think you make a good argument on substantive due process, on cohesiveness. I think the deliberate indifference is going to depend on the circumstances of each case. I'm having a conversation with opposing counsel. Procedural due process, I'm not so sure. Procedural due process looks pretty cohesive. I want more procedures. Tell me why. Here is what I would say to that. I would urge the court not to decide this case without carefully reviewing pages 359 to 414 of the sealed joint appendix, and that is where you see the procedures. Keep in mind that under Missouri Supreme Court Rules 123 and 124, every single class member is subjected to a whole series of judicial review proceedings in juvenile court at which any issue regarding that child's welfare may be raised. So you're looking at a situation where if you read those rules, once that child is placed in foster care out of the custody of the natural parents, there's a 24-hour hearing, there's a three-day hearing, there's a 60-day hearing, a 90-day hearing, subsequent hearings every 90 to 120 days. The court can schedule additional hearings sua sponte. Any interested party at any of those hearings can raise any issue regarding the child's welfare. That includes the natural parents, the foster parents, the children's division, the guardian ad litem, which is mandatory for every class member. Every class member has those procedures. So you think those procedures are completely adequate even if there's the deficiencies in having the medical records, the deficiencies in telling the foster parents what medications the child's been on and all of that? At the very least, at the very least. Yes, I do think those procedures probably, and we argued this in our motion to dismiss, are absolutely sufficient to satisfy procedural due process. Because that argument you've made kind of bleeds the substantive claim together with the procedural claim. But on that procedural claim, at the very least, it would require what this court called in Halverson a file-by-file analysis to determine whether any individual plaintiff hadn't had what procedural due process requires. So they're claiming that it requires, you know, significant review by a neutral attached decision maker. Every single one of them has a juvenile judge who is having hearing after hearing after hearing considering their unique circumstances. Doesn't that bleed into the merits, though? Because on the cohesiveness, really, you look at what they're asking for and whether it's sort of the same claim. And they're all asking for sort of the same thing because of the same underlying harm, which is not getting these procedures ahead of time. I mean, I understand you want to jump to the merits, but aren't you jumping a little too soon to them? I disagree with that. I would emphasize what the Supreme Court said in Dukes. Preliminary consideration of the merits cannot be avoided. That was the phrase of the Supreme Court. It cannot be avoided in this kind of context because you've got to look and see. I mean, consider this. Suppose I'm wrong, and suppose it's not just facially implausible and subject to 12B6 dismissal, which is what the district court ruled in this case. So suppose it does—if you look at the process that was given to name plaintiff Casey, and it's right there in JA 359 of 414, it's hearing after hearing after hearing where both the natural parent and this court-appointed special advocate are raising these very concerns. They're saying again and again, hey— There's no need for any of this because these problems, if there are any problems, are being taken care of adequately by the state of Missouri even as we speak here this morning. I agree with that as well, Your Honor. We raised that. Okay. It'll be interesting to see what your opponents have to say about that one. I assume they disagree, but I emphasize that we're dealing with a children's division. Every human being who works in the children's division has the best— Go ahead, Your Honor. I'm sorry. Everything is wonderful. Well, certainly— Every one of these children is getting the adequate treatment they require. I do not think that the evidence suggests that. What I do think is that the evidence indicates that a majority or a vast majority of them cannot show imminent harm. In Bays v. Reese, the U.S. Supreme Court said to have this kind of substantive due process claim, the harm can't just be remote or possible. It must be likely, sure or very likely, and sufficiently imminent. And the notion that a child in a stable foster care placement with an engaged parent where under the existing policy the medical records have traveled with the child is subject to imminent harm. The harm that they say is at risk here is the misadministration of psychotropic drugs. And there's no question that psychotropic drugs are powerful things. They can have adverse effects. But there's also no question— We're taking care of that, as I understand. We have taken ongoing steps to make sure that every child is in the best position that we can place them. And someday, maybe in the future, they will be taken care of. But we can rely upon them. Well, that is the State's position. I can rely upon the State to do what it should have been doing years ago. Well, I would dispute that it should have been done years ago. I think what the record actually reflects is ongoing efforts to make things better and better and better. But as to, for example— Something like the school desegregation cases, we will take care of it in due time. I'm not familiar with that particular analogy. The analogy I would draw here, Your Honor— You're too young to remember those days. I am young, and I admit. The analogy I would draw here would be the Fifth Circuit's decision in Yates. In the Yates case, the Fifth Circuit said, we're going to look at that— Is that the one in which Judge Higginbotham says, the State raises the flag of federalism but flies it upside down? I love that phrase. I think that's the Stukenberg—the second Stukenberg decision you have in mind, Your Honor. So I disagree that that's what we're doing in this case. But what I would emphasize is that, as to the procedural due process claim, at the very least, to have any plausible claim that any one of these class members has been denied procedural due process, adequate review by a neutral, detached decision-maker would at least require a file-by-file record to see how many of them are raising these psychotropic drug concerns in their juvenile proceedings. Unless I know what remedy is proposed to cure all the procedural due process errors in the world, potential errors in the world, I don't know what kind of a class action we're dealing with. Is the court being asked to rewrite the regs? Is the court being asked to put an injunction in the file of every child at issue? I don't understand what we're doing here. Therefore, I don't understand the relevance of the class action procedure. I thought the Supreme Court said a long time ago it has to be superior to other ways of resolving such as a test case. I absolutely agree that I think that a critical problem with this is that the only proposal of any specificity as to the injunctive relief is in the periphery for the complaint, and that, I think, falls well short of what, for example, the Fifth Circuit says, and, hey, if you're going to have a B2 class, you've got to ask for specific relief. And that request for specific relief is not there. It's very vaguely defined. For example, at page 87 of the Joint Appendix, they're asking the state to be ordered to, quote, that establishes and attracts red flag criteria for outlier prescriptions. We have no idea what that means. And then to set up a system where qualified psychologists are looking through it. This is a sort of injunction that, if implemented, would, I think, inevitably result in ongoing mandating and monitoring by the district court. And, Judge, your opinion in Elizabeth M. says, I think, very correctly, that that should be a situation that the district courts are not appropriately situated to handle, and it ought to be considered with great reluctance. But, Your Honor, for the reason you've stated, we don't even need to get that far. You can remand it on the basis alone that the district court may know findings as to what injunctive relief would apply in this context. If I may, I'll reserve the balance of my time. Thank you, Your Honors. May it please the Court. I'm Stephanie Schuster, here today on behalf of the Apley Foster Children. Nearly all of the state's arguments against class certification turn on the same fundamental misunderstanding of the claims asserted by plaintiffs in the class, as well as the injuries they claim to have suffered. Plaintiffs are not challenging here any decision by any doctor to prescribe psychotropic medication. And plaintiffs do not sue merely because these medications are prescribed. What plaintiffs challenge is the state's systematic failure to ensure that when the state gives these powerful drugs to the children in its custody, it does so safely. You look to the prayer for relief in the complaint, as well as the manner in which it was explained in the class certification decision, which explains what we mean by outlier criteria. Administrators of the system in a particular case, or it will just be a statewide injunction directing the department to do better, put out better. I can't measure, can't begin to measure, and I don't know how the district court thought it could begin to measure, the burdensomeness versus the efficacy of a class action approach to this. So what we're asking for the state to do is quite simple, and proof of that is in the state's opening brief on appeal, where they say that since we filed this lawsuit, and since the class certification decision was rendered, they started to take action and actually implement these steps. So why do you need the class action? Because they haven't actually done it, and they've been saying we were going to do it. Why can't you do this with a proper plaintiff, or a small group of plaintiffs? What is the benefit to all 3,000 children of doing this on a statewide, global basis? Because it's a statewide, global problem, Your Honor. It is a system-wide problem. What is the relief to the individual? The council says they have to have a claim. Well, that's overstating it, but they have to, the relief has, there has to be the prospect of relief on a class-wide basis, which is meaningful, more meaningful than if you didn't have class certification. I don't see that here. Well, I can give you, let me take an example of the secondary review procedure that we're asking for. Right now, any child prescribed psychotropic medication could be given too much of any particular one drug, could be given as many as six or seven drugs at one time. What's your injunction going to say about that? The injunction is going to say, in particular, that we want the state to actually track these prescriptions so that they can flag one of these too many, too much, too young prescriptions for secondary review to make sure that these prescription processes aren't being abused, that these outlier prescriptions aren't causing harm. And why is that a class-wide injunction? Because that affects every single child in the class. But it affects how? Every child in the class. You want them to be in contempt if the furthest county in northwest Missouri then has one proceeding where whatever the directive was at a statewide basis wasn't followed? Then that child gets the benefit of contempt relief? Is that the significance here? No, we're looking for a system that would actually protect that child from being prescribed these drugs in an unsafe manner. Okay, but the system, to the extent the system is decentralized, then you don't have enough parties. Sure, and as to the decentralization argument, it's belied by the record. These are uniform, common policies. And if it is centralized, a centralized injunction is relief for the entire class, and any further relief is going to be case by case. Right, but what we're seeking is the centralized injunction for the entire class. We're not seeking further relief. Why do you need Rule 23? I don't understand. Because each child in this class, every child in the class is taking psychotropic meds without any safeguards. The commonality is on the defense side. It's not on the, I mean, the lack of commonality is on the defense side. Well, I would point to the court's recent decision in But if the class members get the same relief with or without being members of a class, then that tells me this is not a Rule 23 situation. Well, they get the same, actually, I would push back on that, Your Honor, because if they were getting different relief, if individual proceedings would result in different relief, then this would not be a Rule 23 situation. Well, it could be. I mean, you could be here wanting 3,000 subclasses. But we're not, right? What we're seeking is one unified, cohesive class. Then you don't need Rule 23. Well, Rule 23, in particular Rule 23b-2, exists precisely for purposes like this one, where you have children in foster care with no one to speak for them. No, it isn't needed for this situation. There was institutional reform litigation of this kind long before there was Rule 23b-2. Right, but Rule 23b-2 is supposed to foster and actually encourage more reform litigation because it's difficult to do on an individual basis. What support? It's supposed to foster more litigation? It's supposed to promote and foster institutional reform litigation. And your Supreme Court precedent for that? I would cite the court to the Eighth Circuit's decision, I believe it was the Clinton case, saying that the purpose of b-2 was precisely to promote class action and civil rights litigation for that purpose, to make it easier because when you have marginalized individuals who are discriminated against as part of a group or are suffering the same wrong as everyone else in the same class as members who are similarly situated, in order to encourage them to be able to bring a claim and get reform. I mean, they've got you. You're on board. I'm on board? Whether you have one plaintiff in a situation that properly poses the broad problem or 3,000 plaintiffs doesn't matter, but it sure matters in the cost of prosecuting the case and the judicial resources required. Well, what matters here for purposes of the inquiry is whether we meet the requirements of the rule, and we do. And just to return to your comment about commonality. Class action has to be superior. It has to be a superior method for administering the litigation, and this is. It has to be superior to non-class. Correct, Your Honor. All right. But 3,000 individual lawsuits would not be an efficient use of the court's resources when we can handle it. No, but if one lawsuit gets, if you have 3,000 situations, then as you say, you don't have a class situation because you don't have commonality or cohesiveness. Correct. If you have one situation that can be remedied with one plaintiff and the right statewide defendant. Correct, Your Honor. Then I say this is not a Rule 23 case. Well, what that does is it provides relief only to the named plaintiffs. It provides no enforcement rights to anyone else in the class in a population that's this transient where people are aging out. Injunctions have no impact beyond the- No binding relief, Your Honor. No rights to that relief to the named plaintiff, to anyone other than the named plaintiff. The class gets the full benefit and the class seeks the full benefit. Okay, so give me the Eighth Circuit or Supreme Court case that says that. That says that- That the injunction is meaningless for anyone other than the named plaintiff unless it's a class action. I would look to the court's precedence on just Rule 23b2, which is this is how you get enforcement possibility. It binds the entire class, including the plaintiffs and the state. It also provides protection to the state so that they're not subject to the same lawsuit 3,000 times. Does the superiority requirement of b3 then apply to b2? I mean, that's one of the problems I'm having with the analysis. I mean, is this a b2? This is a b2, so the stringent superiority requirement doesn't necessarily apply, but all classes need to be manageable. Right. Even a b2 class, and we can see that. This class is manageable. It's more manageable than having the same claim brought by each plaintiff individually because the claims are common. They are cohesive. They are identical. So here's the problem I'm having. It's a different problem than Judge Loken's having. It's having its cohesiveness, and in particular, your opening statement, I think, undermined cohesiveness because you said we're concerned about the procedures. We're concerned about having these three or four, I think it's three, procedures implemented. The problem is that's not substantive due process. Substantive due process is not about procedure. It's about each individual claim and whether or not there's deliberate indifference. And so it sounds to me like you might be abandoning your substantive due process just by the way you characterize the complaint. Not at all, Your Honor. I would highlight that there are two distinct types of substantive due process injuries. The one that we're asserting, the exposure to a significant and imminent risk of serious harm, is a distinct injury from how that harm might manifest or whether it manifests at all. But the harm has to be imminent, and here's the problem I'm having. There's a wide range of drugs here, everything from SSRIs to really serious antipsychotics, and the risk created by not having these procedures may be very low for somebody with an SSRI or a child with an SSRI, where that's the only thing that they're being prescribed. The risk might be much higher if you're prescribing lithium or some very serious antipsychotic. And so I'm not seeing the cohesiveness here, at least on the substantive due process claim. Procedural due process, I'm a little more sympathetic. Sure. Well, I mean, we have to remember the context, right? An SSRI is not as serious as a drug to an adult as an antipsychotic or to a child. But all of these are mind-altering. The minute this drug goes in the child's mouth, you are changing the brain chemistry of that child, of a developing brain. These are all serious and imminent risks. Even an SSRI poses serious risks and requires these type of safeguards. And, again, I would point the court to the Postalco decision where the court said you need to have a shared risk of harm, even if the magnitude of the risk is going to vary from class member to class member, even if some of them end up suffering no additional harm. That's true, but the problem is, and I think you made a mistake by going substantive due process. So your procedural due process claim is much higher. The problem I'm having with that is I don't know how you could possibly judge deliberate indifference without looking at the individual facts of the prescription. I just think that is literally impossible to do, and that undermines the substantive due process claim. Well, I disagree, Your Honor, because if you're looking at the exposure to the risk, these are well-known risks. These are risks that the state has conceded for years. Even for the SSRIs? Even for all psychotropic medications, regardless of the type, because these are a particularly serious category of drugs, especially for children. All of that is conceded. They've conceded that these problems need to be addressed, specifically the adequacy of the medical records, the need for secondary review, and yet they haven't done anything about it. That's what you need to show deliberate indifference, that they have a knowledge of a serious risk of harm and yet have not addressed it. And it's imminent, right? Opposing counsel is right. It has to be imminent. Absolutely it has to be imminent, but it is here. Because, again, we're dealing with mind-altering chemicals being given to children. I mean, it's imminent the minute that pill goes into the kid's mouth. Going back to Duke v. Wal-Mart, at one point they were talking about who are the disfavored plaintiffs here? They're the children. Are they all disfavored in the same way? Yes, they are, Your Honor. Because of the lack of the adequate? The lack of the adequate safeguards, yes. And would the formulation of a common question of law be too general for appellate review? Is the relief you see too amorphous for appellate review? It's not, Your Honor. In other words, and as you say through your brief, you're not asking for us to review any individual treatment for any individual child. Correct. It's just the general inadequacy of what the state doesn't provide now. In specific ways, what the state doesn't provide now. And that requires review of what the state does provide and what constitutionally the state needs to provide to get it to that basic minimum constitutional level. I can give an example to the Court of a common question that would have something to do with the fact of whether the state has been deliberately indifferent to the risks. Again, what is the state now? Counsel, before you get there, I just want to be clear on the class action standard here, which is if I disagree with you on substantive due process, if I think, for example, that your procedural due process claim may satisfy 23b2, I've got to think about that, but substantive due process does not, isn't the appropriate remedy to vacate and make the district court do a do-over? Well, that's one option, although the court certified on both claims and the record is adequate on both claims. We would urge the court, again, to affirm on the whole grounds. But the court delineated common questions and the analysis specifically with respect to substantive due process and then separately with respect to procedural due process. So the record is there. The court can just remand with instructions to modify consistent with the opinion already rendered. But again, we think the substantive due process claim satisfies. It's the same standard. We're looking at the exact same standard of deliberate indifference that you were looking at in Postalco. It was deliberate indifference. It was the Eighth Amendment, not substantive due process. But you're looking at the same test, and it's an analogous circumstance where you've got class members all exposed to the same injury, even though some of them might suffer only mild side effects and symptoms, some might suffer severe ones, and some might suffer none at all. Those effects don't matter because what matters is the injury that the class shares, and that's the exposure to the serious and imminent risk of harm. And these are serious risks, and we're talking about potential for permanent damage, organ damage, suicide attempts, violence, aggression, hallucinations. These are permanent wrongs. I'd like to add one more point on the state's discretion argument. This is a different sort of case. Not only is there no discretion permitted in the policies, but this is not a case like Duke's where you had discretion dispersed to, you know, thousands of store managers in Walmart stores across the country because this claim doesn't turn on any of those individual decisions. It turns on what the state does and what it doesn't do, particularly with respect to medical records, secondary review, and informed consent. So unless the court has any other questions, for these reasons we'd ask that the court affirm the class cert decision. Thank you. Thank you, Your Honor. I'd just like to turn to the procedural due process question first. Our principal position, which you took in the motion to dismiss, is that the juvenile court proceedings that are mandated for every single class member are categorically sufficient to satisfy procedural due process. But if there's any doubt about that, at least the sort of proceedings that were given to, for example, named plaintiff KC, are obviously sufficient. You have a situation where concerned parties are raising concerns again and again before a neutral judge about psychotropic medications, where three different times a new psychiatrist was ordered to review the prescriptions and concluded that they were sufficient. And every single class member has had at least the opportunity to have that kind of judicial review of these kinds of psychotropic medications. So at the very least, for this class to be cohesive, there would have to be a file-by-file review of all 3,000 class members to see what, if anything, was raised about psychotropic medications in the juvenile court proceedings. And we know for the five or so named plaintiffs, at least two of them had this very kind of review. Because there's KC, where we have 60 pages of transcript where it's raised and addressed again and again and again before a juvenile judge. And all courts of remedial actions are taken before that judge. Also, named plaintiff AH at pages 439 to 471 of the seal joint appendix, those juvenile court records also show an ongoing consideration. So either it's just categorically insufficient, and this Court stated in Elizabeth M. that a, quote, highly implausible claim is not a basis for class certification. The fact that the, let's see, how many children involved here, potentially 3,000? Estimated 3,000. So if three of them have brought claims and have been provided adequate, we don't worry too much about the other 2,997 who may not have advocates who are as effective as the people here this morning. And if that happens, what's the old saying? Stuff happens. What those three, I think my position's different. What those three of the six named plaintiffs indicate is, for example, the likelihood or the possibility that thousands of the named plaintiffs lack any plausible procedural due process claim. And that case after case after case has held that that defeats class certification. And for the reasons Judge Logan was alluding to, the sort of relief that they're asking for can be given on an individual by individual basis. Assuming that the other 2,997 have people who protect their interests. Which they do under Missouri law. They each has a guardian ad litem. Each has foster care parents. And all of these people. It's strange that Judge Lowry wasn't persuaded by the advocacy that you promote here. We respectfully disagree and we think that the court's decision was an error and we ask the court to reverse it. My goodness. May I ask one additional question? Are the kids in the state's view, are the kids, I ask this in the substance due process context, but I also want to ask it in the procedural context. Which is, in the state's view, is every kid entitled to the same procedure? And the reason I'm asking is because these drugs are differently harmful. And so would somebody being prescribed SSRI be entitled to the same procedure as somebody getting a very, very serious medication? You know, a bipolar type medication or something like that? The differences in the medication are absolutely sufficient to defeat commonality for the reasons you've stated. Now, I would emphasize here that every single individual prescription is prescribed by a doctor. So that process, which is, in other words, there was a skillful redefinition of the constitutional injury that they're asserting in the argument on the other side. Because the injury they're asserting is not the mere administration of the drugs. The argument that was made to you is every single one of these drugs is really dangerous to a child. And that's not the constitutional industry. The misappropriation, the misadministration of these drugs is the administration. It is absolutely incontestable that these are valuable, medically appropriate drugs in certain circumstances for many individuals. And that's what you see in the case of KC. Because KC has three different child psychologists, as the court-appointed advocate and the biological parent are saying, there's too many medications and they're bad. Three different child psychiatrists look at them and they all say, this is appropriate, it's medically correct. And every other involved person is saying, she's doing a lot better on these medications. So the constitutional injury that is asserted is not the drug itself. It's the misapplication of that drug. And the procedures that are currently in place are prescription by a doctor and ongoing judicial review by a juvenile court. I apologize for going over. Thank you, Your Honor. Very good. The case has been thoroughly briefed and argued. We'll take it under advice.